**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| RICHARD VOGLER and wife, ) <br> DAYLE VOGLER, ) <br>   ) <br> Plaintiffs, pro se, ) <br>   ) <br> v.   ) <br>   ) <br> COUNTRYWIDE HOME LOANS, ) <br> INC., et al.,   ) <br>   ) <br> Defendants. ) | **MEMORANDUM OPINION <br> AND RECOMMENDATION** <br><br> 1:10CV370 |

This matter is before the court on motions to dismiss by Defendants Countrywide Home Loans, Inc. ("CHL"), The Bank of New York Mellon, as Trustee for the Certificateholders of CWALT, Inc. Alternative Loan Trust 2006-7CB (also erroneously sued as "The Bank of New York Mellon") ("BONY"), BAC Home Loans Servicing, L.P. ("BAC"), Mortgage Electronic Registration Systems, Inc. ("MERS"), and Shapiro & Ingle, L.L.P. ("S&I" and collectively with CHL, BONY, BAC, and MERS "Defendants") (docket nos. 18, 20). The parties have responded to the respective motions, and, in this posture, the matter is ripe for disposition. Furthermore, the parties have not consented to the jurisdiction of the magistrate judge. Therefore, all dispositive motions must be addressed by recommendation. For the following reasons, it will be recommended that the court grant Defendants' motions to dismiss.

**FACTS AND BACKGROUND**

Plaintiffs obtained a mortgage loan for $259,800.00 for their residence at 411 E. Sheraton Park Rd., Pleasant Garden, North Carolina, on or about January 25, 2006. The loan was evidenced by a promissory note ("the Note") and secured by a deed of trust, recorded in book 6475, page 2833, of the Guilford County Registry.

Plaintiffs failed to make payments when payments were due under the terms of the Note. Defendant BONY, in its capacity as Trustee for the deed of trust on Plaintiff's residence, thereafter commenced a foreclosure action against Plaintiff before the Clerk of Superior Court of Guilford County by means of a special proceeding bearing file number 10 SP 1122 ("the Foreclosure"). On March 25, 2010, after hearing evidence and examining the appropriate affidavits and certified copies of documents, the state court found that there was a valid debt owed by the Plaintiff, Richard Vogler. The court also found that Defendant BONY was the holder of the Note, and that the Note was currently in default. The Assistant Clerk of Superior Court of Guilford County entered an order allowing a foreclosure sale to proceed pursuant to N.C. GEN. STAT. § 45-21.16.

On April 12, 2010, Plaintiffs filed this lawsuit in Guilford County District Court. In their complaint, Plaintiffs state 31 claims for relief, including alleged violations of the Fair Debt Collection Practices Act and criminal statute 18 U.S.C. § 474. On May 12, 2010, Defendants removed the case to this court, citing federal question jurisdiction as the basis for removal. Defendants CHL, BONY, BAC, and MERS filed

a motion to dismiss on May 26, 2010, (docket no. 18) and Defendant S&I filed a separate motion to dismiss on June 2, 2010. (docket no. 20).

Plaintiffs argue that Defendants have violated the rules of civil procedure by filing a motion to dismiss in the state court and then again after removal to this court. There is no indication that the state court ruled on the original motion to dismiss. For this court to rule on a motion to dismiss, it has to be filed here along with the required brief. Moreover, this court's May 24, 2010, order expressly allowed Defendants to file their motion and brief. Since this court can find nothing improper with Defendants' filings, it will consider the motion to dismiss.

**STANDARD OF REVIEW ON A MOTION TO DISMISS**

In ruling on a motion to dismiss for failure to state a claim, it must be recalled that the purpose of a 12(b)(6) motion is to test the sufficiency of the complaint, not to decide the merits of the action. *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir. 1991); *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 887 F. Supp. 811, 813 (M.D.N.C. 1995). At this stage of the litigation, a plaintiff's well-pleaded allegations are taken as true, and the complaint, including all reasonable inferences therefrom, are liberally construed in the plaintiff's favor. *McNair v. Lend Lease Trucks, Inc.*, 95 F.3d 325, 327 (4th Cir. 1996).

The duty of fair notice under Rule 8(a), however, requires the plaintiff to allege, at a minimum, the necessary facts and grounds that will support his right to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). As the Supreme

Court has instructed, although detailed facts are not required, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal citation omitted). *See also Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) (clarifying *Twombly*). With these principles in mind, the court now turns to the motion to dismiss.

**DISCUSSION**

Plaintiffs' claims will be addressed in the order that they were presented in the complaint. The numbering and titles of the claims will also match those used in the complaint.

<u>Section II, Claim 1, "NO EVIDENCE OF CONTRACTUAL OBLIGATION"</u>

Plaintiffs argue that there was no contract between themselves and BONY and that Plaintiffs owed no money to BONY. This claim contradicts the findings by the state court when it issued its order allowing the foreclosure and sale to proceed. Thus, the doctrine of collateral estoppel, or issue preclusion, bars Plaintiffs from bringing this claim here. "[C]ollateral estoppel precludes the subsequent adjudication of a previously determined issue, even if the subsequent action is based on an entirely different claim." *Whitacre P'ship v. Biosignia, Inc.*, 358 N.C. 1, 15, 591 S.E.2d 870, 880 (2004).

The state court judgment to which Defendants would have this court give preclusive effect is the foreclosure proceeding in Guilford County. As discussed,

*supra*, the state court foreclosure order expressly found that BONY was the holder of the Note and that Plaintiffs had shown no valid legal reason why the foreclosure should not proceed. To the extent that Plaintiffs failed to raise any issues in the state court proceeding that they attempt to raise in this lawsuit, a North Carolina state court would find that Plaintiffs waived the right to raise those issues. Chapter 45 of the North Carolina General Statutes provides for an appeal of an order allowing a foreclosure sale. *See* N.C. GEN. STAT. § 45-21.16(d1). The appeal must be taken within ten days of the Clerk's order allowing foreclosure, and the appeal must be filed in the Superior Court Division of the county where the foreclosure is occurring. *See id.*

Here, Plaintiffs did not appeal the state court foreclosure ruling. Plaintiffs therefore waived their right in the state courts to contest the issues adjudicated by the Clerk in the state court foreclosure proceedings, including proof of ownership of the Note and deed of trust under N.C. GEN. STAT. § 45-21.16(d). In other words, if this case had remained in state court, the state court would give preclusive effect to the judicial findings in the state foreclosure proceeding, and this court must give the same respect to those findings.

Plaintiffs contend that not all of the Defendants were involved in the foreclosure action and that therefore collateral estoppel does not apply. Plaintiffs ignore the fact that their addition of defendants does not affect the findings of the state court involving only BONY and Plaintiffs, namely that BONY was the holder of

the Note, the debt was owed by Richard Vogler, the Note was in default, and that Plaintiffs had shown no valid legal reason why foreclosure should not proceed. Consequently, Plaintiffs' first claim should be dismissed.

Section II, Claim 2, "MALICIOUS FORECLOSURE"

Plaintiffs claim that Defendants acted fraudulently by pursuing foreclosure without any admissible or verifiable proof to support BONY's right to Plaintiffs' property. Plaintiffs are collaterally estopped from bringing this claim, since the state court determined that BONY was the valid holder of the Note. Since this court will honor that finding, BONY could not have been acting fraudulently when it pursued foreclosure.

Moreover, to succeed on a claim for malicious prosecution, there must be a termination of the earlier proceeding in favor of the current plaintiff. *Best v. Duke Univ.*, 337 N.C. 742, 749, 448 S.E.2d 506, 510 (1994). Since the foreclosure was terminated in Defendants' favor, Plaintiffs' claim must fail. This claim should be dismissed.

Section II, Claim 3, "CRIMINAL CONSPIRACY AND THEFT"

Plaintiffs claim that Defendants were guilty of conspiracy by pursuing foreclosure without evidence of entitlement to do so. Once again, the state court found that BONY had produced evidence that it was entitled to pursue foreclosure, so this claim fails.

Section II, Claim 4, "FRAUDULENT INDUCEMENT"

Plaintiffs claim that they should have been told that their loan was calculated to produce a higher return when sold as a security to an investor and that this constituted fraud. When alleging fraud under North Carolina law, plaintiff must plead "the following essential elements: (1) a false representation or concealment of a material fact, (2) that was reasonably calculated to deceive, (3) which was made with the intent to deceive, (4) that did in fact deceive, and (5) resulted in damage." *Breeden v. Richmond Cmty. Coll.*, 171 F.R.D. 189, 194 (M.D.N.C. 1997). Plaintiffs have not pleaded that the alleged non-disclosure of the possible sale of their loan to an investor was a material fact that should have been disclosed. Neither have Plaintiffs provided any reason why this caused them any harm. Plaintiffs received the loan for which they bargained and have not given any reason why the alleged non-disclosure has resulted in damage to them. Since Plaintiffs have failed to plead the essential elements, this claim should be dismissed.[1]

Section II, Claim 5, "LENDER ATTEMPTING TO FRAUDULENTLY COLLECT ON VOID LIEN"

Plaintiffs appear to argue that the lien associated with the mortgage was invalid. Once again, the state court determined that there was a valid debt owed and

---

[1] Defendants argue in their motion to dismiss that Plaintiffs' fraudulent inducement claim should be barred by the statute of limitations. Since this claim was more easily dismissed on other grounds, the statute of limitations argument is not addressed.

that BONY was entitled to pursue foreclosure. The doctrine of collateral estoppel applies again here, and therefore this claim must fail.

Section II, Claim 6, "LENDER PROFITS BY CREDIT FAULT SWAP DERIVATIVES"

Although unclear, Plaintiffs might be arguing here that Defendants have benefitted from unjust enrichment. As Defendants correctly point out in their Motion to Dismiss, "an action for unjust enrichment is quasi-contractual in nature [and so it] may not be brought in the face of an express contract." *Bright v. QSP, Inc.*, 20 F.3d 1300, 1306 (4th Cir. 1994) (quoting *Acorn Structures, Inc. v. Swantz*, 846 F.2d 923, 926 (4th Cir. 1988)). Plaintiffs had an express contract with CHL, now assigned to BONY, related to the mortgage, so Plaintiffs many not bring a quasi-contract claim for unjust enrichment. Moreover, the statute of limitations for unjust enrichment is three years. *See Housecalls Home Health Care, Inc. v. State, Dept. of Health & Human Servs.*, __ N.C. App. __, __, 682 S.E.2d 741, 744 (2009). Since Plaintiffs filed this suit more than a year after the statute ran, this claim is time barred as well.

Section II, Claim 7, "LENDER CONSPIRED WITH TRUSTEE"

Plaintiffs claim that there was a conspiracy between CHL and the trustee to induce Plaintiffs to sign documents without allowing time for Plaintiffs to read and fully understand what was being signed. "The elements of a civil conspiracy are: (1) an agreement between two or more individuals; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) resulting in injury to plaintiff inflicted by one or more of the conspirators; and (4) pursuant to a common scheme." *Privette v. Univ. of*

*North Carolina*, 96 N.C. App. 124, 139, 385 S.E.2d 185, 193 (1989) (citations omitted). Plaintiffs do not allege any facts to support their claim that there was a conspiracy, nor do they allege any facts showing in what way they were prevented from reading and fully understanding the documents. Plaintiffs do not describe how long the closing lasted, who conducted the closing, whether they were denied the opportunity to ask questions, or whether they were denied the opportunity to consult with a lawyer. This claim fails to meet the pleading requirements of *Twombly* and *Iqbal* and should be dismissed.

Section II, Claim 8, "DECEPTIVE ADVERTISING AND OTHER UNFAIR BUSINESS PRACTICES"

Plaintiffs allege that Defendants have engaged in a variety of unfair and unlawful business practices in violation of the Federal Trade Commission Act, 15 U.S.C. § 45 et seq. This section of the United States Code, however, does not provide for any private cause of action. *See, e.g.*, *Holloway v. Bristol-Myers Corp.*, 485 F.2d 986, 988 (D.C. Cir. 1973). Therefore, this claim should be dismissed.

Section II, Claim 9, "THE LIMITATIONS PERIOD FOR PLAINTIFFS' DAMAGES CLAIMS UNDER TILA AND RESPA SHOULD BE EQUITABLY TOLLED DUE TO THE DEFENDANTS' MISREPRESENTATIONS AND FAILURE TO DISCLOSE."

In this portion of the complaint, Plaintiffs remind the court that claims under the Truth in Lending Act (15 U.S.C. § 1601 et seq.), and the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 et seq.) are subject to the equitable tolling

doctrine. Plaintiffs do not explain, however, how they have a claim under either of these federal laws. This "claim" should be dismissed.

Section II, Claim10, "CLAIM TO QUIET TITLE."

Plaintiffs once again claim that Defendants had no title, estate, lien, or interest in the property. As discussed above, these are arguments that should have been made at the foreclosure hearing or in an appeal of the resulting order. Here, they are barred by the doctrine of collateral estoppel.

Section II, Claim 11, "RIGHT TO A TRIAL BY JURY"

In this section of the complaint, Plaintiffs argue that they should get a trial by jury. Plaintiffs do not describe a cause of action so this "claim" should be dismissed.

Section II, Claim 12, "SUFFICIENCY OF PLEADING"

Here, Plaintiffs argue that the complaint as written is sufficiently particular to allow the case to proceed. Plaintiffs do not describe a cause of action so this "claim" should be dismissed.

Section III, First Claim, "Invalidity of the Power of Sale Clause"

Plaintiffs argue that the use of the term "power of sale" in the mortgage documents is vague and should not be enforced. When it approved the foreclosure, the state court determined that the mortgage documents were valid and therefore Plaintiffs are estopped from making this claim here.

Section III, Second Claim, "Unlawful Securitization of Loan"

Plaintiffs allege that the loan was securitized, and that this violated the power of assignment clause in the loan documents. Plaintiffs fail to allege how the securitization was a violation of the assignment clause. Plaintiffs further allege that this securitization changed the asset used as collateral from real property to personal property. Plaintiffs have not alleged how the securitization of the loan could change the asset from real property to personal property. Even if Defendants had the ability to accomplish this feat, Plaintiffs do not explain how this could harm them. This claim should be dismissed.

Section III, Third Claim, "BONYM [BONY] is not a Party in Interest"

Plaintiffs once again argue that they had no valid contract with BONY. Any finding for Plaintiffs on this claim would necessarily contradict the findings in the state court order allowing foreclosure, so this claim is barred by the doctrine of collateral estoppel.

Section III, Fourth Claim, "BONYM [BONY] Has No Right to Foreclose"

Plaintiffs repeat their claim that they have no contract with BONY, that BONY is not the valid holder of the Note, and that BONY does not have standing to pursue any action arising from the mortgage. Once again, Plaintiffs should have made these arguments at the foreclosure hearing, and Plaintiffs are estopped from bringing this claim here.

Section III, Fifth Claim, "Failure to Account"

Plaintiffs argue that there is no evidence to prove the existence of an accounting of the debt allegedly owed. The state court examined affidavits and certified copies of documents and found that these documents proved the existence of a valid debt and the amount of that debt. Because of that finding, this claim is barred by collateral estoppel.[2]

Section III, Sixth Claim, "The Appointment of Substitute Trustee is Invalid and Void"

Plaintiffs argue that the deed of trust did not authorize the appointment of a substitute trustee with the powers of a trustee. Nevertheless, Plaintiffs also stated that the deed "specifically states . . . that 'Lender may from Time to time remove trustee and appoint a successor trustee . . . .'" (Compl. ¶ 168, docket no. 6.) Moreover, in the state court's order, it implicitly found that the substitution was valid when it stated that "the Substitute Trustee can proceed to foreclosure under the terms of the above described Deed of Trust." (Ex. A, docket no. 19.) Any arguments that the substitution was invalid should have been raised in the foreclosure hearing or at an appeal to the order in the state court. This claim should be dismissed.

---

[2] Defendants argue that no such claim for failure to account exists under North Carolina law as applied to these Defendants. Although the claim is titled "Failure to Account," this purported claim appears to be just another attempt by Plaintiffs to claim that Defendants have no documentation to prove that the debt is legitimate.

Section III, Seventh Claim, "Violation of § 45-21.16"

Plaintiffs allege that Defendants did not follow the notice requirements regarding the foreclosure hearing. Any deficiency in the foreclosure hearing should have been raised in that hearing or by objection or an appeal of the resulting order. In this claim, Plaintiffs are making a "collateral attack on a foreclosure proceeding and judgment, which the law does not permit." *Douglas v. Pennamco, Inc.*, 75 N.C. App. 644, 646, 331 S.E.2d 298, 300 (1985) (citing *Robinson v. United States Cas. Co.*, 260 N.C. 284, 132 S.E.2d 629 (1963)). This claim should be dismissed.

Section III, Eighth Claim, "Lack of a Valid Consideration"

Plaintiffs claim that they were not afforded an opportunity to bargain for the agreement and this implies that there was no consideration, voiding the contract. Plaintiffs allege no facts to support their statement that they were denied the opportunity to negotiate their loan. Furthermore, Plaintiffs received consideration for the contract, namely the loan. Plaintiffs have failed to state a claim for lack of consideration.

Section III, Ninth Claim, "Fraud by Non-Disclosure"

Plaintiffs argue that they were not informed of the "true nature" of the transaction as it actually occurred. As discussed in Section II, Claim 4, *supra*, to state a claim of fraud under North Carolina law, the plaintiff must claim that the misrepresentation or omission was material, and that it caused harm to the plaintiff. *Breeden*, 171 F.R.D. at 194. Here, Plaintiffs have not alleged that the funding behind

the loan was material to their decision to obtain the loan, nor have they alleged facts which would support any claim of damages from this alleged non-disclosure. This claim should be dismissed.

Section III, Tenth Claim, "Common Law Fraud"

Plaintiffs argue that Defendants' misrepresentations were negligent, if not intentional. This appears to be a claim for negligent misrepresentation. "The tort of negligent misrepresentation occurs when [(1)] a party justifiably relies [(2)] to his detriment [(3)] on information prepared without reasonable care [(4)] by one who owed the relying party a duty of care." *Simms v. Prudential Life Ins. Co. of Am.*, 140 N.C. App. 529, 532, 537 S.E.2d 237, 240 (2000) (citing *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 322 N.C. 200, 206, 367 S.E.2d 609, 612 (1988)). Plaintiffs do not specify the nature of the alleged misrepresentations. Nor do Plaintiffs specify how the alleged misrepresentations caused them the specified damages, "including monetary loss, medical expenses, emotional distress, loss of employment, loss of credit, loss of opportunities, attorney fees and costs, and other damages to be determined at trial." (Compl. ¶ 248, docket no. 6.)

Moreover, the statute of limitations on negligent misrepresentation in North Carolina is three years. N.C. GEN. STAT. § 1-52(5); *Cincinnati Ins. Co. v. Centech Bldg. Corp.*, 286 F. Supp. 2d 669, 686 (M.D.N.C. 2003). Since the loan documents were signed in January of 2006 and this suit was filed over four years later, on April 12, 2010, it is barred by the statute of limitations. Plaintiffs have not given any

reason in their complaint or in their response to the motion to dismiss which would cause this court to toll the statute of limitations. This claim should be dismissed.

Section III, Eleventh Claim, "Breach of Fiduciary Duty"

Plaintiffs appear to be claiming that the Defendants had a fiduciary duty to Plaintiffs with respect to the mortgage loan transaction. "A fiduciary duty arises when there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." *Branch Banking & Trust Co. v. Thompson*, 107 N.C. App. 53, 60-61, 418 S.E.2d 694, 699 (1992) (internal quotation marks omitted). "However, an ordinary debtor-creditor relationship generally does not give rise to such a special confidence: [t]he mere existence of a debtor-creditor relationship between [the parties does] not create a fiduciary relationship." *Id.* (alterations in original) (internal quotation marks omitted).

Plaintiffs have not alleged that they had anything other than a debtor-creditor relationship with any of the Defendants. Plaintiffs have not alleged any facts that would indicate that Defendants had a fiduciary duty to Plaintiffs. Without a fiduciary duty to Plaintiffs, there could be no breach of such a duty. This claim should be dismissed.

Section III, Twelfth Claim, "The Deed of Trust is Void"

Plaintiffs once again argue that the deed is void and that they have no valid liability to Defendants. The state court has already determined that BONY was the

-15-

valid holder of the debt, owed by Plaintiff Richard Vogler, so this claim is barred by the doctrine of collateral estoppel.

Section III, Thirteenth Claim, "Negligence/Negligence per se"

Plaintiffs argue that Defendants owed Plaintiffs a duty of care to "provide proper disclosures concerning the terms and conditions of the loans they marketed, to refrain from marketing loans they knew or should have known that borrowers could not afford or maintain, and to avoid paying undue compensation such as 'yield spread premiums' to mortgage Brokers and loan officers." (Compl. ¶ 264, docket no. 6.) The statute of limitations for negligence claims is three years. N.C. GEN. STAT. § 1-52. The claim accrues "at the time of the occurrence of the last act of the defendant giving rise to the cause of action." *Pierson v. Buyher*, 101 N.C. App. 535, 537, 400 S.E.2d 88, 90 (1991) (quoting N.C. GEN. STAT. § 1-15(c)).

Here, all of the alleged acts occurred before the mortgage documents were signed or very shortly thereafter in January 2006. Since this action was filed over four years later, on April 12, 2010, it is barred by the statute of limitations. Plaintiffs have not alleged any facts in their complaint or in their response to the motion to dismiss which would cause this court to toll the statute of limitations. This claim should be dismissed.

Section III, Fourteenth Claim, "Unjust Enrichment"

Plaintiffs repeat their claim for unjust enrichment. For the same reasons given in Section II, Claim 6, *supra*, this claim should be dismissed.

Section III, Fifteenth Claim, "Breach of the Implied Covenant of Good Faith and Fair Dealing"

Plaintiffs argue that Defendants breached the implied covenant of good faith and fair dealing "when Defendants (1) failed to provide all of the proper disclosures and (2) failed to perform valid and/or properly documented substitutions and assignments so that Plaintiffs could ascertain their rights and duties." (Compl. ¶ 264). "In every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement." *Bicycle Transit Auth., Inc. v. Bell*, 314 N.C. 219, 228, 333 S.E.2d 299, 305 (1985).

Plaintiffs have not shown how Defendants' alleged failure to disclose prevented Plaintiffs from receiving the benefits of the agreement. Plaintiffs' rights and duties were established by the original mortgage documents and any assignment of the Note did not change their rights and duties. This claim should be dismissed.

Section III, Sixteenth Claim, "The Signature is Null and Void"

Plaintiffs argue that the "Bank did alter the terms of the Note," and that this amounted to a forgery of the original note. The state court has determined that the debt was valid and Plaintiffs are collaterally estopped in this suit from arguing that the debt is not valid. This claim should be dismissed.

Section III, Seventeenth Claim, "Violation of the Fair Debt Collection Practices Act"

Plaintiffs argue that they did not receive notice as required by the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. Since Plaintiffs do not specify what notice they should have received, this portion of the claim fails the pleading requirements of *Twombly* and *Iqbal*. Plaintiffs also claimed that BONY "transmitted false and fraudulent communications in an attempt to intimidate alleged account holders into paying a debt which they have not verified." (Compl. ¶ 20.) It appears that this allegation is another attack on the validity of the debt that was owed, and that Plaintiffs are claiming that they should not have been receiving requests for payment from BONY because they did not owe any money to BONY. Because Plaintiffs are collaterally estopped from arguing that the debt was invalid, this claim should be dismissed.[3]

Section III, Eighteenth Claim, "Violation of 18 U.S.C. § 474"

Plaintiffs claim that Defendants have violated 18 U.S.C. § 474. Section 474 is a criminal statute that deals with the counterfeiting of securities or obligations of the United States. As such, it is completely irrelevant to the documents associated with the loans here. This claim should be dismissed.

---

[3] Because this court has determined that this claim should be dismissed on other grounds, it will not address Defendants' alternative grounds for dismissing the claim, namely that BONY is not a debt collector as defined by the FDCPA, and not subject to its guidelines.

Section III, Nineteenth Claim, "Intentional Infliction of Emotional Distress"

Plaintiffs claim that Defendants were liable for the tort of intentional infliction of emotional distress ("IIED"). "The essential elements of an action for intentional infliction of emotional distress are '1) extreme and outrageous conduct by the defendant 2) which is intended to and does in fact cause 3) severe emotional distress.'" *Waddle v. Sparks*, 331 N.C. 73, 82, 414 S.E.2d 22, 27 (1992) (quoting *Dickens v. Puryear*, 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981)). For a successful claim, the defendant's conduct must exceed "all bounds usually tolerated by decent society." *Guthrie v. Conroy*, 152 N.C. App. 15, 21, 567 S.E.2d 403, 408 (2002) (quoting *Watson v. Dixon*, 130 N.C. App. 47, 52-53, 502 S.E.2d 15, 19-20 (1998)). In addition, "the term 'severe emotional distress' means any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A.*, 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990). Here, Defendants' alleged conduct does not exceed all bounds usually tolerated by decent society. Plaintiffs' conclusory statement that Defendants' conduct was extreme and outrageous, without alleging facts to support this legal conclusion, does not satisfy the pleading requirements of *Twombly* and *Iqbal*. Moreover, Plaintiffs assert that they suffered severe emotional distress, but

do not allege any facts in support of this assertion.  Because of the insufficiency of the claim, it should be dismissed.

**CONCLUSION**

For the foregoing reasons, **IT IS RECOMMENDED** that the court **GRANT** Defendants' motions to dismiss (docket nos. 18, 20).

_____
WALLACE W. DIXON
United States Magistrate Judge

Durham, NC
August 26, 2010